IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DUSTIN T. WHITE,

Plaintiff,

v.

ADAM BOARDMAN and BRETT VOLKMANN,

Defendants.

OPINION AND ORDER

21-cv-625-wmc

On February 9, 2016, a police officer with the University of Wisconsin Police Department ("UWPD"), found plaintiff Dustin White sleeping in the stairwell of a public parking ramp and arrested him for "camping on university property" in violation of the University's administrative code. After learning that White had an outstanding warrant for an ordinance violation, Officer Boardman searched White's backpack and found a lockbox containing what he thought was evidence of illegal drug use. White was criminally charged with possession of narcotics and drug paraphernalia, as well as bail jumping, but the Dane County District Attorney dismissed the case after state crime lab tests failed to detect the presence of any controlled substances among White's belongings and his defense counsel moved to suppress Officer Boardman's search of his backpack.

In this lawsuit, White now contends that defendant Boardman conducted an illegal search in violation of the Fourth Amendment. He also contends that defendant Brett Volkmann, another UWPD officer who responded to a request for backup during White's initial arrest, violated the Fourth Amendment by failing to intervene and stop Boardman from conducting the illegal search. Before the court is defendants' motion for summary judgment (dkt. #16), arguing that they did not violate White's constitutional rights, and

even if they did, they are entitled to qualified immunity. The court will grant the motion on both grounds. First, Officer Boardman's search of White's backpack and lockbox was a valid inventory search, and Officer Volkmann did not violate White's constitutional rights by failing to stop that search. Second, Boardman is entitled to qualified immunity on plaintiff's claim arising from Boardman's subsequent testing of a lemon juice bottle found near White in the stairwell, because no clearly established law prohibited his doing so.

## UNDISPUTED FACTS[1]

Plaintiff Dustin T. White was homeless at the time he chose to sleep in the stairwell of a public parking structure on the University of Wisconsin campus in Madison, Wisconsin. The university police department received a call about a person sleeping in the stairwell, and defendant Adam Boardman was dispatched to investigate.

Arriving at the parking garage, Officer Boardman found White sleeping in the stairwell on a piece of cardboard, with a backpack at his feet, and a small, opaque lemon-shaped bottle next to him. Boardman approached White and identified himself as a police officer. After White woke up, he immediately pulled his backpack toward him. Boardman again identified himself as a police officer, while stepping backwards, up two stairs, and ordering White to face him and stop reaching for his backpack. Wanting to leave the stairwell because he was alone, his radio did not work in the stairwell, and he felt unsafe,

[1] Unless otherwise indicated, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying evidence as appropriate.

Boardman then told White that he was arresting him for camping on university property.[2] He then handcuffed White and walked him out of the stairwell to his squad car, which was about ten feet away. Through their interaction, White was calm and cooperative, and Boardman initially intended to issue White a citation for the camping violation and release him.

Boardman called for backup, so that another officer could watch White while he completed the citation, and defendant Brett Volkmann responded. Boardman briefly explained the situation to Officer Volkmann, searched White and found his identification, and placed White inside his squad car. While Volkmann monitored White, Officer Boardman checked White's identification through a Department of Transportation database. However, in performing that check, Boardman learned White had an active "civil process – local ordinance" warrant issued by the Police Department for the City of Beloit, Wisconsin, for the offense of "5005 contempt of court POSS PARAPHERNALIA." (Dkt. #24-1.) Boardman learned that the warrant required White to pay a $224.00 bond or spend four days in jail. Confirming through dispatch that the warrant was still active, Boardman determined White should be brought to Dane County jail.

Officer Boardman then searched White's backpack. Among other items, he found clothing, a phone charger, and a hard-cased, black box with a latch and a key lock on the front. Opening the lockbox, Officer Boardman found syringes, alcohol prep pads, metal

[2] Camping on university property is punishable by a fine up to $500. Wis. Admin Code § UWS 18.07(4).

caps, blue elastic strapping and a book of matches.[3] According to White, the black box contained supplies he used at the methadone treatment clinic where he was receiving treatment, but Boardman thought the items were illegal drug paraphernalia. Boardman also asked White whether the lemon juice bottle was his. Initially denying that it belonged to him, White then stated that it was his. According to White, he had used the lemon juice inside the bottle to make lemonade. Boardman next separated the property that he thought the jail would accept and hold, including White's identification card and phone, from the property that he did not think that the jail would accept, including White's extra clothing, phone charger, hygiene items, lemon juice bottle and backpack. Finally, Boardman placed all the property, including the lemon juice bottle, into the trunk of his squad care, before transporting White to the Dane County jail.

Defendant Volkmann left the area when Boardman did, and played no other role in processing any evidence. After Boardman transported White to the jail, he returned to UWPD's headquarters and photographed the lockbox and its contents, sealed those items into an evidence bag, and placed the bag into an evidence locker. Boardman also tested the bottle of lemon juice for controlled substances, having heard that some drug users mix heroin, oxycodone and fentanyl with liquids, such as lemon juice. Boardman's test was positive for a controlled substance, so he sent the bottle to the Wisconsin State Crime Lab for further analysis. Boardman then referred charges for possession of drug paraphernalia

[3] Boardman says the lockbox was not locked, and that he was able to lift the lid and look inside, while White maintains that the box was locked, and that the key to the box was in another pocket in his backpack.

and possession of a controlled substance to UWPD's court services team, who in turn forwarded the information to the Dane County District Attorney.

White was criminally charged with possession of narcotic drugs, possession of drug paraphernalia and bail jumping. However, the state crime lab tested White's property and detected no controlled substances. After White's attorney filed a motion challenging the legality of the search of White's property, the district attorney dismissed the criminal case.

## OPINION

Plaintiff contends that defendant Boardman violated his Fourth Amendment rights by searching his property without a warrant. He further contends that defendant Volkmann violated his Fourth Amendment rights by failing to stop Boardman from conducting the search. Defendants have moved for summary judgment on White's claims, arguing that White cannot prove that any part of the search was unlawful. In the alternative, defendants argue that they are entitled to qualified immunity.

The Fourth Amendment prohibits "unreasonable searches." U.S. Const. amend. IV; *Riley v. California*, 573 U.S. 373, 381-82 (2014); *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Warrantless searches are per se unreasonable under the Fourth Amendment, *unless* one of the few specific exceptions to the warrant requirement applies. *Arizona v. Gant*, 556 U.S. 332, 338 (2009); *United States v. Ochoa-Lopez*, 31 F.4th 1024, 1026 (7th Cir. 2022). Here, it is undisputed that Officer Boardman did not obtain a warrant before searching plaintiff's backpack, opening plaintiff's lockbox or testing the liquid from the lemon juice bottle. However, defendants contend that Boardman's search was reasonable under two exceptions to the warrant requirement: (1) search incident to arrest, and (2) inventory

search. The court will address the applicability of each exception before turning to defendants' alternative assertion of qualified immunity.

## I. Search incident to arrest

A search performed incident to a lawful arrest is a well-established exception to the warrant requirement. *United States v. Robinson*, 414 U.S. 218, 224 (1973). The justification for this exception is two-fold: (1) the officers are able to remove weapons that the arrestee might seek to use; and (2) the officers can seize evidence that might be concealed or destroyed. *United States v. Jenkins*, 850 F.3d 912, 917 (7th Cir. 2017). A search incident to an arrest is constitutionally valid only if it is executed "commensurate with [one of these] purposes," contemporaneous with the arrest, and on the arrestee's person or the area within the arrestee's immediate control. *United States v. Hill*, 818 F.3d 289, 295 (7th Cir. 2016) (*quoting Gant*, 556 U.S. at 339). The "area of immediate control" in particular includes the space which the suspect might gain possession of a weapon or destructible evidence, including containers found on the suspect. *E.g., Hill*, 818 F.3d at 295 (search of bag defendant was holding at the time he was detained was a permissible search incident to arrest).

Plaintiff does not dispute that he was lawfully arrested, nor could he. Instead, he argues that Officer Boardman's search of his backpack and lockbox, as well as the testing of the lemon juice bottle, went beyond the scope of a valid search incident to that arrest. The court agrees. To begin, Boardman's search of plaintiff's backpack and lockbox was contemporaneous with plaintiff's arrest, as the search occurred within minutes of plaintiff's arrest. *See United States v. Mitchell*, 64 F.3d 1105, 1110 (7th Cir. 1995) (search was

contemporaneous with arrest when the officer conducted it "[i]mmediately after securing" the arrestee); *United States v. Willis*, 37 F.3d 313, 318 (7th Cir. 1994) (concluding that search was contemporaneous with arrest when the officer commenced the search "shortly after he had secured [defendant] and well before [defendant] was transported to the police station").

However, by the time Boardman actually searched the property, it was not in the area within plaintiff's "immediate control," as plaintiff was already handcuffed, locked inside a squad car and being watched by another officer. As the Supreme Court explained in *Gant*, the "immediate control" requirement "ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." 556 U.S. at 339. "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search incident-to-arrest exception are absent and the rule does not apply." *Id.* In this instance, there was *no* possibility that plaintiff could have reached his backpack or lockbox at the time Boardman searched them, so there was no need for Officer Boardman to search the backpack or lockbox immediately for weapons or evidence that might be concealed or destroyed.

As for Boardman's testing of the substance in the lemon juice bottle, there is *no* plausible argument that this was a valid search incident to arrest. In fact, the lemon juice was not within the area of plaintiff's immediate control at the time Boardman seized it, and more importantly, that test was not even performed contemporaneously with arrest.

Instead, Boardman tested the lemon juice well after he had transported plaintiff to the jail and returned by himself to the UWPD.

Defendants' arguments to the contrary are not persuasive. First, while defendants suggest that the Supreme Court's decision in *Gant* applies only to searches of vehicles incident to arrest, their *only* support for that proposition is a quote, taken out of context, from *Riley v. California*, 573 U.S. 373, 384 (2014). (Dkt. #26 at 4.) In *Riley*, the Supreme Court considered the search of an arrestee's cell phone. Noting that that the vehicle exception permitting the search of a car's passenger compartment reasonably believed to contain evidence relevant to the crime of arrest recognized in *Gant* was based on "circumstances unique to the vehicle context," the Court in *Riley* clarified that this exception was "independent" from the well-established standards applying to searches incident to arrest, which were also discussed and affirmed in *Gant* and which authorize searches incident to arrest only if the search is limited to the arrestee's person and the area within the arrestee's immediate control. *Riley*, 573 U.S. at 383–85 (citing *Gant*, 556 U.S. at 343). Moreover, *Gant*'s discussion of well-established, search-incident-to-arrest exception was not novel; it was drawn directly from earlier Supreme Court precedent, including *Robinson*, 414 U.S. 218 (1973), and *Chimel v. California*, 395 U.S. 752 (1969).

Second, defendants argue that the Seventh Circuit has upheld searches of an arrestee's closed bag as valid searches incident to arrest, even where the arrestee was already handcuffed and detained. However, none of these cases involved a factual scenario similar to the one presented here. Specifically, defendants cite *United States v. Tejada*, 524 F.3d 809, 812 (7th Cir. 2008), a case in which the court of appeals upheld officers' search of a

bag, which had been inside another bag inside a closed cabinet. While acknowledging that some prior decisions had authorized similar searches, the court of appeals actually held in *Tejada* that the officers' actions would *not* be justified as a valid search incident to arrest according to Supreme Court precedent, because the arrestee was on the ground and handcuffed at the time of the search. *Id.* at 811–12. Instead, the court of appeals concluded that the search could be upheld under the doctrine of inevitable discovery. *Id.* at 812.[4] In any event, *Tejada* was decided before the Supreme Court reiterated the standard for a valid search incident to arrest in *Gant* and subsequent cases.

Defendants also cite *Hill*, a case in which a police officer brought a suspected bank robber into an interview room for questioning. Because the suspect was apparently holding a bag at the time, the officer searched it, only to discover that it contained stacks of cash wrapped in bank bands. 818 F.3d at 293. The Seventh Circuit held that the search was unobjectionable because the suspect was holding the bag when he went into the interview room. The third case cited by defendants, *United States v. Rutley*, 482 F. App'x 175 (7th Cir. 2012), involved a similar scenario, in which officers searched a bag that the arrestee was holding on his person when arrested. *Id*. at 177. However, neither *Hill* nor *Rutley* control the outcome in this case. On the contrary, in both *Hill* and *Rutley*, the arrestees could have reached into their bag for a weapon, whereas there was no possible way for plaintiff to reach into his backpack by the time Boardman decided to search it.

[4] Defendants here do not argue that Boardman's search of plaintiff's property was justified under the doctrine of inevitable discovery.

Accordingly, Defendants have failed to show that Boardman's searches fell under the search-incident-to-arrest exception to the warrant requirement.

## II. Inventory search

Defendants' assertion that their conduct comported with the inventory search exception to the presumption against warrantless searches is more persuasive. Inventory searches are another, well-recognized exception to the warrant requirement under the Fourth Amendment. *United States v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010). Inventory searches generally involve searching the property found on an arrestee's person or in the arrestee's vehicle before the arrestee is incarcerated or the vehicle is impounded. Such searches protect police from potential danger, protect the owner's property while it remains in police custody, and protect the police against claims of lost, stolen or damaged property. *Id. (*citing *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)). An inventory search is lawful if: (1) the individual whose possession is to be searched has been lawfully arrested; and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person in accordance with established inventory procedures. *Cartwright*, 630 F.3d at 613*; see also United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006).

Officer Boardman's search of plaintiff's backpack and lockbox was a lawful inventory search. In particular, White does not dispute that he was lawfully arrested, and Boardman's search of plaintiff's backpack and lockbox were routine and reasonable in light of UWPD's arrest and search procedures following Boardman's decision to transport plaintiff to be held in the Dane County jail. As the Supreme Court has explained, it is

"entirely reasonable" for police to examine and inventory "property found on the person or in the possession of an arrested person who is to be jailed," including property found in closed containers in the arrestee's possession. *Illinois v. Lafayette*, 462 U.S. 640, 646-48 (1983). Doing so allows the police "to protect themselves or the owners of the lot against false claims of theft or dangerous instrumentalities." *Colorado v. Bertine*, 479 U.S. 367, 373 (1987). Thus, Boardman reasonably inventoried plaintiff's backpack and lockbox to ensure that neither contained dangerous or fragile items, and to protect UWPD from being accused of theft after plaintiff was released, regardless of whether the box was unlocked or Boardman had to use plaintiff's key to open the lockbox.

Similarly, Boardman's search of plaintiff's backpack and lockbox complied with UWPD's specific policy instructing officers to conduct inventory searches of seized property without a warrant, because:

> An inventory protects the property of the owner; an inventory protects the law enforcement agency against claims that property in its possession has been lost or stolen; and an inventory allows officers to discover any potential danger that may exist because of property in their possession.

(Dkt. #19-6 at 6). In addition, UWPD has *two* policies requiring that officers search arrestees before taking them to jail. One policy states that an arrestee's property, including "packages, luggage, book bags, wallets or purses" must be "thoroughly searched" before the arrestee is taken to jail. (Dkt. #19-5, "Subsequent Searches Incident to Arrest" V.A.).) The second policy states that an arrestee's property must be searched and separated if:

> not accepted by the jail, including backpacks, weapons of any sort, any flame producing products, anything sharp, perishable, etc., must be separated from the property that the jail will accept and either held at UWPD or disposed of.

(Dkt. #19-4, "Booking Procedures/Prisoner Transport" II.D.)

While compliance with UWPD's policies is not dispositive of the Fourth Amendment question, the fact that Boardman's search of the backpack and lockbox complied with all of these policies certainly supports the conclusion that Boardman's search was a reasonable inventory search. Further, because Boardman's search of the backpack and lockbox were valid inventory searches, Officer Volkmann had no obligation to stop Boardman from conducting the search.

The only remaining question then is whether defendant Boardman's decision to personally test the lemon juice, for which Volkmann was not present, was a valid inventory search. The court concludes that it was not. Defendants cite no cases suggesting that an inventory search reasonably involves drug-testing of a substance, nor do defendants point to UWPD search policies that direct officers to test substances seized as part of an inventory search.[5]

## III. Qualified immunity

Assuming that the testing of the lemon juice was not a valid search incident to arrest or as part of a valid inventory search, this leaves defendants' assertion of qualified immunity, which shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the

[5] This court is *not* deciding that defendant Boardman's warrantless test violated the Fourth Amendment, just that the question is unsettled. In particular, the court is not deciding whether such a field test of the contents of an open container without a warrant at the scene, out of concern for spoilation or determination of probable cause to arrest for drug possession, would not be permissible. *See* discussion *infra*.

challenged conduct. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). In other words, qualified immunity "shields from liability police officers 'who act in ways they reasonably believe to be lawful.'" *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008) (*quoting Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

Defendants maintain that Boardman is entitled to qualified immunity for testing of the lemon juice because it was supported by reasonable suspicion and not prohibited by clearly established law. More specifically, defendants argue that Boardman's actions were supported by *United States v. Place*, 462 U.S. 696 (1983). That case addressed the length of time in which luggage could be detained for a drug-dog sniff, but it does not support defendants' argument. *Id*. at 706. Instead, the Supreme Court in *Place* held that an officer who had reasonable suspicion that luggage contained narcotics could detain luggage briefly to arrange for exposure to a narcotics detection dog, but that a 90-minute detention of the luggage was unreasonable under the Fourth Amendment. *Id.* at 706, 710. Thus, the *Place* decision not only fails to support Boardman's decision to seize the lemon juice bottle, transport it to UWPD and test it for narcotics, that decision does not lend support to this court's conclusion that the issue is an open legal question.

Even the case the plaintiff cites discussing testing of a substance by law enforcement -- *United States v. Jacobsen*, 466 U.S. 109 (1984) -- actually appears to support defendant *Boardman's* position. (Pl.'s Br. (dkt. #23) 18–19). In *Jacobsen*, the Supreme Court found the unwarranted search of contents of a FedEx package did not violate the Fourth Amendment by drug enforcement officers because a FedEx employee and supervisor had originally opened the damaged package, exposing four zip-lock plastic bags containing

white powder. *Id.* at 121–22. In particular, the Court emphasized that the officers knew that the package "contained contraband and little else," and the owners of the package did not have a reasonable expectation of privacy in contraband. *Id.* Thus, the Court went on to hold that the drug officer's subsequent, field-testing of a small amount of the white powdery substance was not a Fourth Amendment search at all: "[g]overnmental conduct that can reveal whether a substance is cocaine, and no other arguably 'private' fact, compromises no legitimate privacy interest." *Id.* at 123. Since *Jacobson*, several courts have relied on *Jacobson* in arguing that a field test revealing only the presence or absence of narcotics is not a "search" within the Fourth Amendment that must be supported by a warrant or a warrant exception. *See, e.g., United States v. Smythe*, 84 F.3d 1240, 1243 (10th Cir. 1996) ("tests that determine only whether or not a substance is a controlled substance" are not searches within the meaning of the Fourth Amendment); *United States v. Parks*, 119 F. App'x 593, 599 (5th Cir. 2004) (field test to detect methamphetamine was not a Fourth Amendment search); *United States v. Adams*, No. 4:12 CR 96 AGF/DDN, 2013 WL 399002, at *12 (E.D. Mo. Jan. 14, 2013) (field test of package that was positive for marijuana "not a search under the Fourth Amendment"); *Hackett v. Artesia Police Department*, 2009 WL 10681494, at *2, *9 (D.N.M. Sept. 23, 2009) (officer's "amphetamine or methamphetamine field-test" was "not actionable under the Fourth Amendment because a chemical test for illegal drugs is not recognized as a 'search'"). Meanwhile, plaintiff cites no cases to the contrary, and no cases suggesting that it was clearly established that Boardman could not perform a test to determine whether the substance in the lemon bottle was a narcotic. Thus, far from placing the constitutional

question "beyond debate," the existing precedent in this area suggests that so long as Boardman seized the lemon bottle lawfully as part of the inventory search, which is not in dispute, his subsequent test of its contents may well have been lawful.

Regardless, *plaintiff* bears the burden of defeating defendants' qualified immunity defense. *See Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021). And unfortunately for plaintiff, neither the court nor he has been able to identify clearly established law that prohibited Boardman from testing the liquid in the lemon bottle. Accordingly, Boardman is entitled to qualified immunity on plaintiff's claim relating to the testing of the lemon juice. *See Thorp v. D.C.*, 319 F. Supp. 3d 1, 18 (D.D.C. 2018), aff'd, 788 F. App'x 8 (D.C. Cir. 2019) (granting qualified immunity to officer who tested pills, without a warrant, that had been lawfully seized).

ORDER

IT IS ORDERED that:

1) The motion for summary judgment filed by defendants Adam Boardman and Brett Volkmann (dkt. #16), is GRANTED.

2) The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 20th day of July, 2022.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge